UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVONTE HAMILTON,

Plaintiff,

-against-

WESTCHESTER COUNTY, CORRECT CARE
SOLUTIONS, LLC, RAUL ULLOA, JOSEPH K.
SPANO, FRANCIS DELGROSSO, KARL
VOLLMER, and LEANDRO DIAZ,

Defendants.

18-cv-8361 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Davonte Hamilton ("Plaintiff"), proceeding *pro se*, commenced this action on
September 13, 2018, pursuant to 42 U.S.C. § 1983 ("§ 1983" or "Section 1983") and Title II of
the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* (ECF No. 2.) Plaintiff
asserts claims against Correct Care Solutions, LLC ("CCS") and Raul Ulloa (together, "Medical
Defendants"); Westchester County, Joseph K. Spano, Francis Delgrosso, Karl Vollmer, and
Leandro Diaz (collectively, "State Defendants"), alleging (1) violations of his Eighth and
Fourteenth Amendment rights by all Defendants, and (2) violations of the ADA by State
Defendants and Defendant Ulloa.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), all Defendants have moved to
dismiss the Complaint. (ECF Nos. 33 & 39.) Plaintiff does not oppose either motion. For the
following reasons, Defendants' motions to dismiss are GRANTED.


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/24/2020

1

# BACKGROUND

The following facts are taken from Plaintiff's Complaint and are accepted as true for the purposes of this motion. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

On August 21, 2018, Plaintiff was in the custody[1] of the Westchester County Department of Corrections (the "Jail").[2] (Compl. ¶ 14.) He opted to participate in outdoor recreation and was escorted by correctional staff to the jail yard. (*Id.*) Plaintiff and several other inmates decided to play basketball on the concrete basketball court. (*Id.* ¶ 15.) During the game, Plaintiff stepped on a portion of cracked and crumbling concrete, causing him to dislocate his knee and tear his meniscus. (*Id.*) Plaintiff states he later realized that the entire court was in the same condition as that portion of concrete and had been like that for thirty years. (*Id.*) On or about August 28, 2018, Plaintiff filed a grievance about the condition of the court with "Sergeant Hollis." (*Id.* ¶¶ 23–24, 49.) Plaintiff states that Sergeant Hollis accepted the grievance but did not timely respond, prompting Plaintiff to file an appeal with the Jail's grievance coordinator. (*Id.* ¶ 49.) Plaintiff never received a response to his appeal. (*Id.*) The basketball court was subsequently closed but not repaired. (*Id.* ¶ 23.)

Plaintiff states that the initial response to his injury was reasonable, but that subsequent treatment was not. (*Id.* ¶ 31.) On August 27, 2018, Plaintiff, who presumably received medical attention at the Westchester Medical Center ("WMC"), received a recommendation from WMC that he immediately have an MRI scan. (*Id.* ¶ 29.) However, Defendant Ulloa, the medical director of CCS who was responsible for treating Plaintiff at the Jail, disregarded those instructions and

---

[1] Plaintiff does not specify in the Complaint whether he was an inmate or a pretrial detainee.

[2] Although Plaintiff does not name the specific facility in his Complaint, and consistently refers to the "Westchester County Department of Corrections" when describing his location, Defendants indicate that Plaintiff was confined at Westchester County Jail during the relevant period of this action. (*See* State Defs. Mem. of Law in Support of Mot. to Dismiss ("State Defs Mot.") (ECF No. 38) at 1.)

"caus[ed] Plaintiffs [sic] injury to settle."  (*Id.*)  Allegedly, Defendant Ulloa ignored aftercare instructions and wrapped Plaintiff's knee in an ace bandage instead of providing him a knee stabilizer,[3] which was not effective in keeping Plaintiff's knee in alignment.  (*Id.* ¶ 30.)

After his injury, Plaintiff was required to use crutches, as standing on his injured leg caused him excruciating pain.  (*Id.* ¶ 17.)  He complains that it was difficult to navigate his housing unit, which, like the basketball court, had cracked and damaged concrete flooring.  (*Id.* ¶¶ 16, 21.)  He also states that the shower in his housing unit lacked a bench, rail, or rubber mats, and required inmates to step over a two-and-a-half-foot ledge to enter and exit.  (*Id.*)  Accordingly, Plaintiff had to stand on his injured leg and suffer severe pain when entering and exiting the shower.  (*Id.*)  He also had to shower with his crutches.  (*Id.*)  Plaintiff further complains that the upstairs location of his housing unit made it impossible for him to go outside for recreation, since he could not use the stairs while he was injured and there were no ramps.  (*Id.* ¶ 20.)  Plaintiff avers that State Defendants were on notice about the conditions of his housing unit through "Plaintiffs [sic] grievances and other grievances filed for similar/identical claims or concerns."  (*Id.* ¶ 27.)

Plaintiff states that on September 5, 2018, after participating in a family visit, he was directed to a "strip frisk" in spite of his injury.  (*Id.* ¶ 17.)  Plaintiff was forced to stand on his injured leg to undress, since the search area did not have a bench or rails to assist him.  (*Id.*)  Plaintiff says that this incident needlessly forced him to endure excruciating pain.  (*Id.*)

Separately, Plaintiff complains that his housing unit lacks adequate ventilation or central air, causing the air to retain humidity due to heat and steam from the showers.  (*Id.* ¶ 22.)  This makes it difficult for Plaintiff to breathe.  (*Id.*)  Further, the ceilings, including in his cell, routinely become covered with condensation, such that rusty water drips down everywhere.  (*Id.*)  Plaintiff

---

[3] Plaintiff alleges in some parts of the Complaint that the knee stabilizer was "confiscated," but does not clarify what he means by that.  (Compl. ¶¶ 32, 34.)

claims that he attempted to file a grievance about these conditions on or about September 4, 2018, with nonparty "Sergeant Kitt." (*Id.* ¶ 25.) However, Sergeant Kitt refused to accept Plaintiff's grievance and stated, "I'm sick of you fucking crybabies this is jail handle it." (*Id.*)

## LEGAL STANDARD

On a 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. When a motion to dismiss a complaint is unopposed, a court should nevertheless "assume the truth of a pleading's factual allegations and test only its legal sufficiency." *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000).

The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). In fact, courts must interpret the *pro se* plaintiff's pleading "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y.

2010), and the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## DISCUSSION

### I.      Exhaustion

State Defendants move to dismiss the Complaint on the basis of Plaintiff's alleged failure to exhaust his administrative remedies.  (*See* State Defs. Mem. of Law in Support of Mot. to Dismiss ("State Defs. Mot.") (ECF No. 38) at 11–14.)  State Defendants argue that it is clear from the face of the Complaint that Plaintiff failed exhaust his administrative remedies. (*See id.*)  The Court agrees in part.

Under the Prison Litigation Reform Act ("PLRA"), inmates are precluded from filing an action "with respect to prison conditions under [42 U.S.C. § 1983] . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Similarly, "claims under the ADA must be exhausted via the grievance procedure established under the PLRA" before an inmate-plaintiff may pursue remedies in federal court.  *Arce v. O'Connell*, 427 F. Supp. 2d 435, 440 (S.D.N.Y. 2006); *see Rodriguez v. Heit*, No. 9:16-CV-706, 2018 WL 3121626, at *2 (N.D.N.Y Mar. 30, 2018); *Alster v. Goord*, 745 F. Supp. 2d 317, 332 (S.D.N.Y. 2010) (citing *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *abrogated in part on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002)).  The "exhaustion requirement applies to all inmate suits about prison life." *Porter*, 534 U.S. at 532.

This "language is 'mandatory,'" meaning that "[a]n inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies."  *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).  Moreover, the PLRA contemplates "proper exhaustion," meaning an inmate must use "all steps that [the prison grievance system]

holds out" and do so "*properly* (so that the [prison grievance system] addresses the issues on the merits." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). In other words, to satisfy the exhaustion requirement, an inmate must use all available administrative mechanisms, including appeals, "through the highest level for each claim." *Varela v. Demmon*, 491 F. Supp. 2d 442, 447 (S.D.N.Y. 2007); *Veloz v. New York*, 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004).

Notwithstanding the above, an inmate need not exhaust administrative remedies if those remedies are unavailable. *Hydara v. Burger*, No. 14-CV-1415 (KMK), 2018 WL 1578390, at *4 (S.D.N.Y. Mar. 29, 2018); *see also Williams v. Annucci*, No. 16-CV-7288 (NSR), 2018 WL 3148362, at *7–8 (S.D.N.Y. June 27, 2018). An administrative remedy is functionally unavailable when (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859–60. The Second Circuit has explained that, where a prisoner provides a grievance to a correctional officer who never files it, an administrative remedy can be "unavailable" if the regulations "do not adequately outline the process to appeal or otherwise exhaust administrative remedies." *Williams*, 829 F.3d at 124.

Notably, exhaustion is an affirmative defense, not a pleading requirement. Thus, inmates need not "specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Nor must an inmate plead exhaustion with particularity. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003). Instead, it is a defendant's burden to demonstrate a lack of exhaustion. *Colón v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, No. 15 Civ. 7432 (NSR),

2017 WL 4157372, at *5 (S.D.N.Y. Sept. 15, 2017) (citing *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009)). A district court may not dismiss a complaint for failure to exhaust administrative remedies unless "nonexhaustion is clear from the face of the complaint." *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301 (KMK), 2018 WL 1626175, at *9 (S.D.N.Y. Mar. 30, 2018) (quoting *Lovick v. Schriro*, No. 12 Civ. 7419(ALC)(RLE), 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014)).

In his Complaint, Plaintiff specifically states that he filed or attempted to file grievances with regard to the condition of the basketball court (the "basketball court grievance") and the poor air and sanitary conditions in his housing block (the "cell conditions grievance"). As to the basketball court grievance, Plaintiff alleges he was able to file the grievance on August 28, 2018, and that it was accepted but not timely responded to. (Compl. ¶¶ 23–4, 49.) Thereafter, Plaintiff filed an appeal, to which he never received an answer, with the Jail's grievance coordinator. (*Id.* ¶ 49.) Plaintiff was never able to successfully file the cell conditions grievance because "Sergeant Kitt refused Plaintiff's grievance" and told Plaintiff that he was "sick of you fucking crybabies."[4] (*Id.* ¶ 25.) Plaintiff further alleges that the poor conditions of his housing unit, including "the poor ventilation, damaged flooring, lack of benches and/or shower rails to assist handicap [sic] inmates, and … [the] step inmates must make in order to enter and exit the shower onto a waxed[,] slippery floor" were made known to Defendants "through Plaintiffs [sic] grievances, and other grievances filed for similar/identical claims or concerns." (*Id.* ¶ 27.)

Proper exhaustion entails using all available administrative mechanisms, including appeals, "through the highest level for each claim." *Varela*, 491 F. Supp. 2d at 447. The Jail's

---

[4] Contrary to State Defendants' claims, this exchange cannot be characterized as a "non-response" to Plaintiff's cell conditions grievance, (State Defs. Mot. at 12). Rather, taking the allegations in the Complaint as true, Sergeant Kitt pointedly refused to process the cell conditions grievance.

grievance procedures include two levels of appeal, with the first being to the Facility Grievance Coordinator and the second to the New York State Commission of Corrections Citizen's Policy and Complaint Review Council (the "Review Council"). *See, e.g.*, *Bennett v. James*, 737 F. Supp. 2d 219, 224 (S.D.N.Y. 2010) (describing grievance procedures in Westchester County Department of Corrections Inmate Rules and Regulations Handbook).[5] Plaintiff avers that he filed the basketball court grievance and appealed the non-response to the grievance coordinator. Plaintiff does not state that he then appealed to the Review Council. Based on the allegations in the Complaint, Plaintiff did not fully exhaust his claims regarding the state of the basketball court. Accordingly, those claims are dismissed without prejudice to Plaintiff bringing them after he has complied in full with the exhaustion requirements of the PLRA.

With respect to the cell conditions grievance, Plaintiff alleges that his attempt to file was thwarted by Sergeant Kitt's direct refusal to accept the grievance. Accepting the allegations of the Complaint as true and construing the pleadings in a liberal fashion, Plaintiff has alleged a situation where the Jail's personnel may have rendered the grievance process unavailable to Plaintiff. *See Williams*, 829 F.3d at 124. Since non-exhaustion is not clear on the face of the Complaint, Plaintiff's claims regarding the air quality and sanitary conditions in his cell and housing unit survive at this phase.

State Defendants argue that the absence of allegations in the Complaint that Plaintiff filed grievances concerning deliberate indifference or the ADA demonstrates nonexhaustion as to those claims. This argument is unconvincing. As the Court has explained, an inmate is not required to plead exhaustion with particularity. It is not clear on the face of the Complaint that Plaintiff did not in fact exhaust his administrative remedies as to his deliberate indifference and ADA

---

[5] State Defendants confirm that this remains the grievance procedure applicable to inmates at the Jail. (State Defs. Mot. at 12.) Plaintiff, having failed to oppose State Defendants' motion, is deemed to concede that this is the case.

discrimination claims, including his claims regarding his deprivation of handicap accessible facilities.

Whether Plaintiff will be able to maintain his surviving allegations of exhaustion after discovery is yet to be seen. At this time, State Defendants' motion to dismiss based on Plaintiff's failure to exhaust must be granted as to Plaintiff's claims arising from the allegedly unsafe conditions of the Jail's recreation area, and otherwise denied.

## II.  Merits

### A. Plaintiff's Section 1983 Claims

Section 1983 provides that "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Paterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege (1) the challenged conduct was attributable to a person who was acting under color of state law and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York.*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

In his Complaint, Plaintiff alleges that the conditions of his confinement were "atrocious" and beyond "all bounds tolerated by a civilized society." (Compl. ¶ 36.) Plaintiff also states he was subjected to cruel and unusual punishment when he was forced to place his weight on his injured leg during a family visit and while getting into the shower, when he was forced to shower

with his crutches, and when he was given an ace bandage for his injury rather than an appropriate stabilizing device. (*Id.* ¶¶ 34, 46.) Finally, Plaintiff claims that the failure to provide him with treatment as directed by WMC, an appropriate stabilizing device for his knee injury, and relocation into handicap accessible housing constituted deliberate indifference to his serious medical needs. (*Id.* ¶¶ 31, 34.) Plaintiff alleges that the foregoing violated his rights under the Eighth and Fourteenth Amendments.

### 1. Conditions of Confinement

Plaintiff does not explicitly state in his Complaint whether he is a detainee or inmate. Regardless of his classification, however, the Constitution requires that prison officials "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A "pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment," whereas an inmate's claims arise under "the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). In either case, to set forth a § 1983 claim for conditions of confinement, a plaintiff must show that an individual "acted with deliberate indifference to the challenged conditions." *See Sanders v. City of New York*, No. 16 Civ. 7426 (PGG), 2018 WL 3117508, at *6 (S.D.N.Y. June 25, 2018). This deliberate indifference test contains an objective prong and a subjective prong. *Darnell*, 849 F.3d at 29.

Under the debilitate indifference test, "[t]he objective prong is the same under either [the Eighth or Fourteenth Amendment] analysis: It requires that the deprivation at issue be, 'in objective terms, sufficiently serious.'" *Simmons v. Mason*, No. 17-CV-8886 (KMK), 2019 WL 4525613, at *9 (S.D.N.Y. Sept. 18, 2019). A plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Darnell*, 849 F.3d

10

at 30. "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Id.* at 29 (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)).

Conversely, the subjective prong differs between the Fourteenth and Eighth Amendment analyses. Under the Eighth Amendment, a convicted prisoner must show that a correction officer "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety; the official must both [have been] aware of facts from which the inference could [have been] drawn that a substantial risk of serious harm exists, and he must [have] also draw[n] the inference." *Farmer*, 511 U.S. at 837. On the other hand, under the Fourteenth Amendment, a plaintiff must plausibly allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Strange v. Westchester Cty. Dep't of Corr.*, No. 17-CV-9968 (NSR), 2018 WL 3910829, at *2 (S.D.N.Y. Aug. 14, 2018) (internal quotations omitted). This standard is "defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts . . . have subjected the detainee to a substantial risk of harm." *Darnell*, 849 F.3d at 30.

Here, a review of the Complaint indicates that Plaintiff has alleged constitutional deprivations by State Defendants related to (a) the hot, humid conditions, lack of ventilation, and rusty water dripping in his cell, (b) the lack of handicap accessible showers and ramps in his housing unit, and (c) the cracked flooring in his housing unit. The Court addresses each of these conditions below.

### a. *Cell Conditions*

Under certain circumstances, inadequate ventilation and unsanitary conditions may

constitute objectively serious deprivations of a prisoner's rights under the Eighth and Fourteenth Amendments. *See Darnell*, 849 F.3d at 30 (noting that "[u]nsanitary conditions, especially when coupled with other mutually enforcing conditions, such as poor ventilation and lack of hygienic items[,] . . . can rise to the level of an objective deprivation); *Willey v. Kirkpatrick*, 801 F.3d 41 (2d Cir. 2015) (vacating dismissal of Eighth Amendment claim based on allegations that officers confined prisoner to cell with little airflow and then incapacitated his toilet for over a week at a time); *see also Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996) ("Inadequate 'ventilation and air flow' violates the Eighth Amendment if it 'undermines the health of inmates and the sanitation of the penitentiary.'" (quoting *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985))); *Ramos v. Lamm*, 639 F.2d 559, 568–69 (10th Cir. 1980) (inadequate ventilation resulting in excessive odors, heat, and humidity "with the effect of creating stagnant air as well as excessive mold and fungus growth, thereby facilitating personal discomfort along with health and sanitation problems," was constitutionally impermissible); *O'Brien v. Garcia*, No. 3:19-CV-1113(JAH), 2019 WL 4015647 (S.D. Cal. Aug. 26, 2019) (allegations that cell vents containing debris caused plaintiff to have headaches, nosebleeds, and breathing difficulties were sufficient to satisfy objective component of Eighth Amendment claim). "A lack of adequate ventilation at a detention facility can contribute to the transmission of air-borne diseases. . . . Inadequate ventilation also undermines efforts to maintain minimum levels of sanitation within . . . facilities, providing an environment where mildew, mold, rust, and bacteria can flourish." *Benjamin v. Fraser*, 161 F. Supp. 2d 151, 160 (S.D.N.Y. 2001), *aff'd in relevant part and rev'd in part by* 343 F.3d 35 (2d Cir. 2003).

Similarly, courts have condemned prison officials' failure to supply inmates with adequate controlled temperatures to avoid excessive heat or cold. *See Gaston v. Coughlin*, 249 F.3d 156,

165 (2d Cir. 2001) (exposure to freezing temperatures for five months can constitute an Eighth Amendment violation); *Hinojosa v. Livingston*, 807 F.3d 657, 666 (5th Cir. 2015) (complaint alleging prison cell temperatures exceeding 90 to 100 degrees, resulting in death of plaintiff who suffered heatstroke, stated violation of Eighth Amendment); *Gates v. Cook*, 376 F.3d 323, 339–40 (5th Cir. 2004) (exposing inmate to extreme cell temperatures can constitute cruel and unusual punishment). It is well-recognized that excessive heat, in particular, can pose serious risks to inmates. *See Hinojosa*, 807 F.3d at 666 (heatstroke resulted in plaintiff's death); *Ball v. LeBlanc*, 792 F.3d 584, 593 (5th Cir. 2015) (describing the risk of heatstroke); *Gibson v. Moskowitz*, 523 F.3d 657, 660 (6th Cir. 2008) (mentally disabled inmate died from severe dehydration after several days in 90 to 100 degree observation room).

Inadequate ventilation that results in extreme temperatures or produces unsanitary conditions rises to the level of a constitutional violation if it constitutes an "objectively, sufficiently serious . . . denial of the minimal civilized measure of life's necessities." *Willey*, 805 F.3d at 66. Where unsanitary conditions are concerned, courts look at "both the duration and the severity of the exposure." *Id.* at 68; *see also Darnell*, 849 F.3d at 30. Likewise, exposure to extreme temperatures for short periods of time, or which does not result in a serious health risk, is usually insufficient to state an Eighth Amendment claim. *Compare Stevens v. City of New York*, No. 10-CV-5455(PGG), 2011 WL 3251501, at *3–4, n.2 (S.D.N.Y. July 22, 2011) (inmate wearing a paper gown and no slippers who was forced to reside in a cell that was 50 degrees for three days did not suffer constitutional violation) *with Clark v. Bandy*, No. 2:10-CV-169(RWS), 2011 WL 1346975, at *3 (N.D. Ga. Apr. 8, 2011) (prisoner could state Eighth Amendment claim where he complained to prison officials of excessive heat and trouble breathing for three months). An inmate need not "show that [he] actually suffered from serious injuries" to allege a constitutional

violation.  *Darnell*, 849 F.3d at 31.

Here, Plaintiff has alleged that the inadequate ventilation system in his housing unit resulted in the accumulation and rust and condensation on the ceilings.  (Compl. ¶ 22.)  These conditions were apparently so bad that water containing rust would drip from the ceiling onto Plaintiff, his bed, and his personal items.  (*Id.*)  Plaintiff further complains that the air in his cell was "humid and stagnated, making it difficult to breathe."  (*Id.*)  Finally, Plaintiff references the "unbearable heat"[6] in his housing unit.  (*Id.* ¶ 25.)  Plaintiff does not provide any indication as to how long these conditions have persisted, or when they first would have become known to State Defendants.

Plaintiff's complaints of poor ventilation resulting in unbearable heat, difficulty breathing, and rust dripping in his cell, in combination, are troubling.  Nonetheless, to assess whether a constitutional violation occurred, this Court must understand the severity of the conditions and the duration that Plaintiff was exposed to them.  *See Darnell*, 849 F.3d at 30; *see also Figueroa v. Cty. of Rockland*, No. 16-CV-6519(NSR), 2018 WL 3315735, at *7 (S.D.N.Y. July 5, 2018) (dismissing conditions of confinement claim alleging lack of ventilation, insect infestation, and feces/bodily fluids on the walls because Plaintiff did not provide details as to duration of conditions); *Jackson v. Sullivan Cnty.*, 16-CV-3673(JCM), 2018 WL 1582506, at *4 (S.D.N.Y. Mar. 27, 2018) (dismissing conditions of confinement claim in absence of allegations regarding severity and duration).  Without any additional information as to the duration of the conditions Plaintiff alleges, the Court cannot determine that they pose an objectively unreasonable risk to

---

[6] Bare allegations of extreme heat, without more, would not ordinarily rise to the level of a constitutional violation. *See Stevens*, 2011 WL 3251501, at *3 (noting that a "claim based on exposure must be premised on a threat to health and safety that existed for a prolonged period (citing *Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003))).  Here, however, Plaintiff couples his temperature-related allegations with complaints of humidity, difficulty breathing, contamination of his person and belongings with rust, and poor ventilation.

Plaintiff's health.  Thus, Plaintiff has not satisfied the objective prong of a deliberate indifference claim based on his conditions of confinement.

Even if Plaintiff had pleaded sufficient facts related to the duration of the conditions in his housing unit, Plaintiff's claim would remain subject to dismissal because Plaintiff fails to plead that the individual State Defendants possessed the requisite mental state.  Even under the Fourteenth Amendment *mens rea* standard, Plaintiff must allege that the individual State Defendants acted recklessly or intentionally.  *See Darnell*, 849 F.3d at 35.  Allegations of negligence do not suffice.  *Jackson*, 2018 WL 1582506, at *4.  While Plaintiff has alleged that Sergeant Kitt belligerently refused to accept Plaintiff's cell conditions grievance, Sergeant Kitt is not a named defendant in this action.  As to Defendants Spano, Delgrosso, Vollmer, and Diaz, Plaintiff has only alleged that they were "on notice" of, *inter alia*, the poor ventilation in his housing unit, but "took no action."  (Compl. ¶ 27.)  Further, Plaintiff states that those Defendants were "responsible for the conditions of confinement" at the Jail, and that Delgrosso, Vollmer, and Diaz conducted "daily in person rounds" to "identify any hazardous conditions of confinement." (*Id.* ¶¶ 8–11.)  Plaintiff fails to demonstrate that any of the individual State Defendants acted in a manner that rose above the level of negligence.

Because of the defects identified above, State Defendants' motion to dismiss this claim is granted.

### b.  Handicap Accessibility

As the Court has stated, under the objective prong of a conditions of confinement claim, "while the Constitution 'does not mandate comfortable prisons,' inmates may not be denied 'the minimal civilized measure of life's necessities.'"  *Alster v. Goord*, 745 F. Supp. 2d 317, 335 (S.D.N.Y. 2010) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see Moran v.*

*Livingston*, 155 F. Supp. 3d 278, 291 (W.D.N.Y. 2016) (applying this standard to Fourteenth Amendment deliberate indifference analysis). Such necessities include basic human needs such as "the essential bodily functions of toileting and showering." *Id.* at 336 (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). "Claims of such deprivations are generally found to be sufficiently grave when they involve the possibility of serious pain or injury." *Montalvo v. Koehler*, No. 90-CV-5218, 1992 WL 396220, at *4 (S.D.N.Y. Dec. 21, 1992) (collecting cases).

"[C]ourts have found that wet or slippery floors or a prison's failure to equip showers with non-slip mats are not the types of conditions warranting relief under the Eighth Amendment." *Shariff v. Coombe*, 655 F. Supp. 2d 274, 300 (S.D.N.Y. 2009); *see Adams v. Perez*, No. 08-CV-4834(BSJ), 2009 WL 513036, at *3 (S.D.N.Y. Feb. 27, 2009) ("[A] failure on the part of prison officials to provide shower mats does not rise to the level of a constitutional violation."); *Sylla v. City of New York*, No. 04-CV-5692(ILG), 2005 WL 3336460, at *3 (E.D.N.Y. Dec. 8, 2005) (explaining that "[c]ourts have regularly held that a wet or slippery floor does not pose an objectively excessive risk to prisoners"). As to whether the failure to provide a disabled inmate with accessible shower facilities, including shower safety railings, deprives a plaintiff of his constitutional rights, courts in this Circuit are divided. *Compare Parkinson v. Goord*, 116 F. Supp. 2d 390, 398 (W.D.N.Y. 2000) (failure to provide shower safety railings did not deprive inmate with one leg of adequate medical care or his Eighth Amendment rights) *and Rivera v. Dyett*, Nos. 88-CV-4707, 90-CV-3783, 1994 WL 116025, at *9 (S.D.N.Y. March 28, 1994) (failure to provide accessible toilet and shower facilities did not deprive plaintiff, who was allegedly injured as a result of such failure, of his Eighth Amendment rights) *with Green v. Maldonodo*, No. 3:17-CV-957(CSH), 2017 WL 3568662, at *3 (D. Conn. Aug. 17, 2017) (allegations that plaintiff was forced to walk over slippery surfaced and step over a three-foot wall to shower, given his leg injury,

established the objective element of an Eighth Amendment claim).

Plaintiff claims that he has been forced to shower in unsafe conditions given the current state of his leg. Specifically, Plaintiff must stand on his injured leg to step into the shower and then rely on his crutches while showering on a slippery floor. Plaintiff alleges that these conditions have caused him unnecessary pain and are "physically impractical." (Compl. ¶ 17.) Notably, Plaintiff injured his leg on August 21, 2018, and filed his Complaint on September 13, 2018, just over three weeks later. Plaintiff references grievances that allegedly made State Defendants aware of his shower concerns but is not specific as to when he filed those, or with whom. (¶ 27.)

Based on the information Plaintiff has provided in his Complaint, the Court finds that Plaintiff has not plausibly alleged a constitutional violation based on State Defendants' failure to provide handicap accessible showers. Plaintiff was deprived of accessible shower facilities for approximately three weeks or less, depending on when his grievance was filed. *See Maldonodo*, 2017 WL 3568662, at *1–2 (plaintiff sought handicap accessible showers on numerous occasions over a period of approximately five months). During that brief period, Plaintiff continued to shower and makes no allegations that this exposed him to a risk of serious injury. Rather, Plaintiff complains that showering was very uncomfortable due to his knee injury and was "physically impractical." Plaintiff's allegation that he lacked a handicap-accessible shower for a few weeks does not satisfy the objective element of an Eighth or Fourteenth Amendment claim based on his conditions of confinement.

Plaintiff's complaint that he was deprived access to the outdoor recreation area because of a lack of ramps or elevators in his housing unit fares no better. Notably, Plaintiff has not stated that he has been deprived of *any* recreation or exercise. *See Anderson v. Coughlin*, 757 F.2d 33, 36 (2d Cir. 1985) (noting that "[c]ourts have recognized that some opportunity for exercise must

be afforded to prisoners," but the Constitution does not mandate it take a particular form).  State Defendants' failure to provide Plaintiff ramp or elevator access to outdoor recreation for approximately three weeks or less does not amount an objectively serious constitutional harm.  *See Gantt v. Horn*, No. 09-CV-7310(PAE), 2013 WL 865844, at *7 n.6 (S.D.N.Y. March 8, 2013) (noting that 64-day period of denial of recreation "is shorter than those in which a wholesale denial of recreation has been held to rise to the level of an Eighth Amendment violation"); *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 214 (N.D.N.Y. 2001) (inmate who was denied all outdoor recreation for a period of six months did not state an Eighth Amendment claim).

For the foregoing reasons, State Defendants' motion to dismiss Plaintiff's deliberate indifference claims premised on State Defendants' failure to provide Plaintiff with handicap accessible facilities is granted.  To the extent Plaintiff states a deliberate indifference claim against Medical Defendants' arising out of Defendant Ulloa's failure to order Plaintiff transferred to an accessible housing unit, his claim fails for the same reasons.

### c.  *Cracked Flooring*

While prison officials may not deny a prisoner the minimal civilized measure of life's necessities, "lawsuits alleging garden-variety torts in the prison system that do not implicate basic human needs and constitutional rights are properly within the province of state courts, and are not cognizable under Section 1983."  *Hawkins v. Nassau Cnty. Corr. Facility*, 781 F. Supp. 2d 107, 113 (E.D.N.Y. 2011); *see Flowers v. City of New York*, 668 F. Supp. 2d 574, 578 (S.D.N.Y. 2009).  Thus, courts in this Circuit have routinely dismissed Section 1983 claims under the objective element of the deliberate indifference inquiry because they allege simple state law torts.  *See, e.g.*, *Estevez v. City of New York*, No. 16-CV-73(JGK), 2017 WL 1167379, *4 (S.D.N.Y. Mar. 28, 2017) (allegations of slippery floor around shower area did not rise to level of objective constitutional violation); *Seymore v. Dep't of Corr. Servs.*, No. 11-CV-2254(JGK), 2014 WL

641428, at *4 (S.D.N.Y. Feb. 18, 2014) (dismissing Section 1983 claim under objective prong where inmate complained of unsafe living conditions caused by improper tile used in bathroom floor, failure to repair cracks in the floor, failure to address leaks, and provision of unsuitable footwear); *Hawkins*, 781 F. Supp. 2d at 114 (dismissing Section 1983 claim under objective prong where inmate slipped and fell in the shower).

Plaintiff alleges that State Defendants exposed him to unsafe living conditions by failing to repair cracks in the flooring of his cell and housing unit. He explains that the state of the flooring became an issue after he sustained his leg injury and was forced to use crutches to navigate the housing unit. Plaintiff does not allege deprivations denying him the minimal civilized measure of life's necessities. Rather, Plaintiff's claims with respect to cracked flooring are more akin to simple state law tort claims. Accordingly, Plaintiff does not plausibly allege a sufficiently serious and therefore constitutionally cognizable deprivation.

State Defendants' motion to dismiss this claim is granted.

## 2. The Strip Search

Plaintiff alleges that State Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they subjected him to a strip search requiring him to put his weight on his injured leg. Just as the Court observed with regard to Plaintiff's challenges to his conditions of confinement, the standard under which Plaintiff's strip search claims must be analyzed depends on whether he was a pretrial detainee at the time of the search. If Plaintiff was a convicted prisoner at that time, his claims are analyzed under the Cruel and Unusual Punishment Clause of the Eighth Amendment. Alternatively, if Plaintiff was a pretrial detainee at the time of the search, his claims are analyzed under the Due Process Clause of the Fourteenth Amendment. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a

formal adjudication of guilt in accordance with due process of law.").

As the Court has explained, the protections of the Eighth Amendment or Fourteenth Amendment may be triggered where a plaintiff alleges deliberate indifference to conditions that objectively pose an unreasonable risk to the plaintiff's health and safety. Further, the plaintiff must plead that the prison officials responsible for the constitutional deprivation acted with more than an ordinary lack of due care for the plaintiff's interests and safety.

In addition, the Eighth and Fourteenth Amendments protect prisoners from the use of excessive force. After conviction, a prisoner stating an excessive force claim must demonstrate that force was applied "maliciously and sadistically" for the purpose of inflicting "unnecessary and wanton pain and suffering." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (a prisoner must allege sufficient facts to demonstrate that prison officials used force "maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline" to state an Eighth Amendment claim). Conversely, a pretrial detainee must only show that the force purposely or knowingly used against him was objectively unreasonable in order to demonstrate that it was excessive in violation of the Fourteenth Amendment's Due Process Clause. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). In determining objective reasonableness, a fact specific-inquiry, courts may consider a number of factors including the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Id.*

Although prisoner claims arising from allegedly unconstitutional strip searches are typically brought under the Fourth Amendment, "the manner in which a strip search is conducted

may in certain circumstances give rise to an Eighth [or Fourteenth] Amendment claim." *Show v. Patterson*, 955 F. Supp. 182, 191 (S.D.N.Y. 1997) (citing *Frazier v. Ward*, 426 F. Supp. 1354, 1366 (N.D.N.Y. 1977)). "For challenges to strip searches in particular, to state an Eighth Amendment violation, courts in this Circuit require that a plaintiff allege that the defendants engaged in egregious conduct." *Holland v. City of New York*, 197 F. Supp. 3d 529, 545 (S.D.N.Y. 2016) (applying this standard to a Fourteenth Amendment excessive force claim) (citing cases).

Here, Plaintiff does not challenge the appropriateness of the search itself. Rather, Plaintiff argues that requiring him to strip in an area without benches for him to sit on, to avoid placing his weight on his injured leg, constituted constitutionally impermissible punishment. (Compl. ¶ 18.) Construing the Complaint in the light most favorable to Plaintiff, the Court interprets these allegations as asserting both deliberate indifference and excessive force. Plaintiff states a claim under neither theory.

As to whether the prison officials who conducted the search were deliberately indifferent to a condition that posed an unreasonable risk to Plaintiff, the Court finds that the lack of benches or handrails in the area in which Plaintiff was searched following his family visit does not rise to the level of a constitutionally serious harm. *See Amaker v. Lee*, No. 13-CV-5292(NSR), 2019 WL 1978612, at *14–15 (S.D.N.Y. May 3, 2019) (allegations that plaintiff was required to sit in dirty chair during strip search did not support facially plausible Eighth Amendment claim); *Bradshaw v. City of New York*, No. 15-CV-4638(ER), 2018 WL 818316, at *6 (S.D.N.Y. Feb. 9, 2018) (denial of request to be searched in a designated area and fact that plaintiff was required to stand on a dirty floor during his search did not state a constitutional violation). Nor does the fact that Plaintiff was momentarily forced to shift his weight to his injured leg to undress, on a single occasion,[7]

---

[7] Plaintiff alleges elsewhere in the Complaint that he was forced to place weight on his knee "on two separate occasions during family visits." (Compl. ¶ 47.) However, Plaintiff only identifies one such occasion, which he

constitute objectively unreasonable force, let alone malicious or sadistic conduct. Plaintiff does not allege that he asked for a chair and was refused, or that the search was unnecessarily prolonged or repeated. *See Holland*, 197 F. Supp. 3d at 546–47 (absence of allegations that search was unnecessarily prolonged or repeated, and exigent conditions justifying search, warranted dismissal of pretrial detainee's excessive force claim). To be sure, Plaintiff alleges only that he had to shift weight to his injured leg to undress, which was required for prison officials to conduct their search. He does not state that he was otherwise forced to stand on his injury for no legitimate purpose.

Plaintiff's strip search-related claim would fail even if he had adequately pleaded a constitutional violation, because Plaintiff has not alleged personal involvement on the part of any Defendant. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under Section 1983, a plaintiff must show, *inter alia,* the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Here, Plaintiff does not state that any of Defendants were involved in the strip search, that they created or were aware of a prison policy of violating prisoners' rights by conducting improper strip searches, or that they supervised the subordinates who conducted the strip search in a grossly negligent manner. *See Williams v. Smith*, 781 F. 2d 319, 323 (2d Cir. 1986) (listing ways in which a defendant may be personally involved in a Section 1983 violation). In his Complaint, Plaintiff states only that Defendants Spano, Delgrosso, Vollmer, and Diaz were "responsible for the conditions of confinement" at the Jail, and that Delgrosso, Vollmer, and Diaz were "further responsible for conducting in person rounds of [the Jail] for unsafe prison conditions." (Compl. ¶¶ 8–11.) This does not suffice to allege personal involvement.

---

states took place on September 5, 2018. (*Id.* ¶ 17.) Plaintiff does not provide any detail as to when the second incident occurred, what that incident involved, or who partook in that incident. Accordingly, Plaintiff fails to state any claim based on a second incident.

For the foregoing reasons, Plaintiff's Section 1983 claims arising out of the purportedly unconstitutional strip search are dismissed.

### 3. Deliberate Indifference to Serious Medical Needs

The same two-part deliberate indifference analysis applicable to the conditions of confinement claims of pretrial detainees and convicted inmates applies to claims of deliberate indifference to medical needs. *See Sadowski v. Dyer*, No. 3:18-CV-1074(KAD), 2019 WL 2085994, at *6 (D. Conn. May 13, 2019) (citing *Walker v. Wright*, No. 3:17-CV-425 (JCH), 2018 WL 2225009, at *5 (D. Conn. May 15, 2018)). With respect to the objective prong, in the context of medical care, two inquiries determine whether a deprivation is objectively serious. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). Because "the prison official's duty is only to provide reasonable care," prison officials are liable only if they fail "'to take reasonable measures' in response to a medical condition." *Id.* at 279–80 (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

The second inquiry is "whether the inadequacy in medical care is sufficiently serious." *Salahuddin*, 467 F.3d at 280. If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Id.* If the offending conduct is the "medical treatment given," however, "the seriousness inquiry is narrower." *Id.* When "the prisoner is receiving appropriate on-going treatment for his condition," and brings a "denial of medical care claim based on a temporary delay or interruption in treatment," courts look to "the severity of the temporary deprivation alleged by the prisoner," not "the severity of the prisoner's underlying medical condition." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

The *mens rea* component of a deliberate indifference claim in the context of medical treatment differs depending on whether a plaintiff has been convicted of a crime. If the plaintiff has not been convicted, he must plausibly allege that the defendant-official acted intentionally or recklessly failed to act with reasonable care to mitigate risks to the plaintiff's health and safety. *See Darnell*, 849 F.3d at 35; *Gomez v. Westchester Cty.*, No. 19-CV-1335(VB), 2020 WL 635577, at *9 (S.D.N.Y. Feb. 11, 2020). The standard is an objective one. *Id.* Alternatively, if the plaintiff has been convicted, he is required to plead that the defendant-official subjectively knew of and disregarded a substantial risk to the plaintiff's health and safety. *See Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference.") It is well-established in this that mere medical malpractice or negligence is insufficient to support the *mens rea* prong of a deliberate indifference claim under either of the foregoing standards. *See Estelle v. Gamble,* 429 U.S. 97, 106, (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Here, Plaintiff states that he dislocated his knee and tore his meniscus playing basketball and that Medical Defendants failed to provide proper medical care. Specifically, Plaintiff alleges that Defendant Ulloa (1) "disregarded the instructions" of doctors at WMC that Plaintiff receive an immediate MRI, "causing Plaintiffs [sic] injury to settle," and (2) failed to provide, or "confiscated," a knee stabilizer that "was essential in maintaining [Plaintiff's] knee straight [sic]." (Compl. ¶¶ 29–34.) Plaintiff speculates that "Defendants have delayed Plaintiffs [sic] MRI in [an] attempt to shift cost to the Federal Bureau of Prisons upon [Plaintiff's] transfer." (*Id.* ¶ 33.) The Court notes that the MRI instruction was allegedly given on August 27, 2018, about seventeen days before Plaintiff commenced this action. (*Id.* ¶ 29.) Plaintiff admits that "the initial response

to his injury was reasonable, but the subsequent treatment thereafter can be characterized as 'deliberate indifference.'" (*Id.* ¶ 31.)

It is unclear what Plaintiff means when he says that Defendant Ulloa's failure to order an MRI immediately caused his injury to "settle." Nonetheless, the Court reads the Complaint in the light most favorable to Plaintiff and infers that Plaintiff is claiming the delay in ordering an MRI, in conjunction with the failure to provide Plaintiff with a knee stabilizing device, contributed to the medical issues he ultimately encountered with respect to his knee. These medical issues included numbness, throbbing pain, wobbling in Plaintiff's knee, and excruciating pain when standing. (*Id.* ¶ 31.) It is likely that at least some of these issues were the natural consequence of Plaintiff's injury, rather than the result of Plaintiff's not receiving additional or different treatment in the weeks immediately following his injury. However, for the purposes of the instant motion, Plaintiff adequately alleges a sufficiently serious deprivation under the objective prong of a deliberate indifference analysis.

In *Estelle,* the Supreme Court noted that medical decisions such as whether to order X-rays or other "diagnostic techniques" do not rise to the level of cruel and unusual punishment but are, at most, indicative of medical malpractice. *Id.* at 107 (whether to order an MRI or similar diagnostic treatment "is a classic example of a matter for medical judgment"). Similarly, "disagreements among treating medical professional do not create an inference of deliberate indifference." *Allah v. Switz*, No. 14-CV-5970(KMK), 2017 WL 519269, at *7 (S.D.N.Y. Feb. 8, 2017). However, where diagnostic techniques are prescribed by a treating physician, but never facilitated or arranged for, some courts in this Circuit have held that a plaintiff may state a deliberate indifference claim. *See Williamson v. Naqvi*, No. 3:19-CV-4(MPS), 2019 WL 2718476, at *6 (D. Conn. June 27, 2019); *Price v. Reilly*, 697 F. Supp. 2d 344, 33 (E.D.N.Y. 2010); *Lloyd*

*v. Lee*, 570 F. Supp. 2d 556, 569 (S.D.N.Y. 2008).

Plaintiff's allegations are that medical personnel at WMC, where Plaintiff was initially examined, provided aftercare recommendations to Defendant Ulloa which included a recommendation that Plaintiff receive an immediate MRI. Plaintiff does not allege that Defendant Ulloa accepted the recommendation or prescribed an MRI but failed to ensure that it was completed. Plaintiff simply states that in the seventeen days following WMC's recommendations, Defendant Ulloa did not order an MRI and generally "ignored aftercare treatment." (Compl. ¶¶ 29–30.) Plaintiff's unsupported conclusion that Defendant Ulloa failed to order the MRI based on cost considerations is pure conjecture and does not suffice to plead the requisite mental state for a deliberate indifference claim. At most, Defendant Ulloa's failure to order an MRI of Plaintiff's knee within seventeen days of receiving an MRI recommendation from WMC constituted negligence, which is not actionable under Section 1983. The Court concludes that Defendant Ulloa's conduct, as pleaded, would not constitute deliberate indifference to a substantial risk of harm to Plaintiff's health under the *mens rea* prong of a claim under either the Eighth or Fourteenth Amendments. *See Fernandez v. Federal Bureau of Prisons*, No. 99-CV-4944(VM), 2001 WL 913929, at *3 (S.D.N.Y. Aug. 13, 2001) (vague allegations that defendants chose not to follow aftercare suggestions and ignored plaintiff's pleas for medical care did not satisfy either prong of a deliberate indifference claim on motion for summary judgment).

Similarly, Plaintiff's contention that in the weeks following his injury he was provided with an ace bandage instead of a "knee stabilizer" does not show that the officials who gave him the ace bandage and "confiscated" the stabilizer acted with deliberate indifference. "[M]ere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not

give rise to a [constitutional] violation." *Chance*, 143 F.3d at 703; *see also Allah*, 2017 WL 519269, at *6–7 (plaintiff's allegations evincing nothing more than a disagreement with the treatment he was provided were insufficient to establish deliberate indifference); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) ("A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. Nor does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred." (citations omitted)). Importantly, "[g]eneral 'dissatisfaction with a doctor's chosen course of treatment—even when that course was negligent—is insufficient to establish deliberate indifference.'" *Cruz v. Corizon Health Inc.*, No. 13-CV-2563(CS), 2016 WL 4535040, at *7 (S.D.N.Y. Aug. 29, 2016) (quoting *Zackery v. Mesrobian*, 299 Fed. App'x 598, 601 (7th Cir. 2008)).

Plaintiff does not indicate that Defendant Ulloa or other medical staff at the Jail failed to offer him *any* medical care. Rather, Plaintiff alleges that he did not receive the stabilizing device he wanted. Even if the knee stabilizer Plaintiff references were a more appropriate form of treatment than the ace bandage, Plaintiff pleads only negligence, which is not actionable under the Eighth or Fourteenth Amendments. *See Allah*, 2017 WL 519269, at *6 (failure to provide occupational therapy to plaintiff in accordance with recommendation of another doctor could not sustain a deliberate indifference claim). Accordingly, Plaintiff's allegations with respect to the knee stabilizer are insufficient to state a deliberate indifference claim.

### B. ADA Claims

An incarcerated plaintiff asserting a claim under the ADA must allege that he is a "qualified individual with a disability," 42 U.S.C. § 12131, who "was denied the opportunity to participate

in or benefit from [the prison administration's] services, programs, or activities or [the prison administration] otherwise discriminated against him by reason of his disability." *Wright v. N.Y. State Dept. of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016); *see also Hallett v. N.Y. State Dept. of Corr. Servs.*, 109 F. Supp. 2d 190, 198 (S.D.N.Y. 2000) (holding that a plaintiff must allege that "he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability").[8]

It is unclear from the Complaint whether Plaintiff intends to bring his ADA claims against the individual Defendants, as well as Westchester County. Because the ADA does not provide for liability against individual defendants, Plaintiff's ADA claims are dismissed to the extent they are asserted against Defendants Ulloa, Spano, Delgrosso, Vollmer, and Diaz. *See Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Insofar as Plaintiff seeks to bring ADA claims against the individual Defendants in their official capacities, his claims likewise fail. Although the question is unsettled, numerous courts in the Southern District have held that official capacity claims are not viable under the ADA. *Fox v. State University of New York*, 497 F.Supp.2d 446, 449 (S.D.N.Y. 2007). Further, such claims would be redundant given that Plaintiff already has an ADA claim against Westchester County. *Id.* at 451; *see also Scalercio-Isenberg v. Port Auth. of N.Y.*, No. 16-CV-8494(VSB), 2018 WL 1633767, at *6 (S.D.N.Y. March 31, 2018). The

---

[8] The Second Circuit has held that "a private suit for money damages under Title II of the ADA may only be maintained against a state if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability." *Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001). Some courts in this Circuit have held that this requirement is limited to the context of suits against state entities protected by the Eleventh Amendment's grant of sovereign immunity. *See Scalercio-Isenberg v. Port Auth. of N.Y.*, No. 16-CV-8494(VSB), 2018 WL 1633767, at *6 (S.D.N.Y. March 31, 2018). Others have applied the precedent in *Garcia* even in suits against state entities, such as counties, not subject to sovereign immunity. *See Jackson v. DeMarco*, No. 10-CV-5477(JS), 2011 WL 1099487, at *2 (E.D.N.Y. March 21, 2011) (applying *Garcia* standard in suit against Suffolk County). Moreover, the Second Circuit has acknowledged that the Supreme Court's decision in *United States v. Georgia*, 546 U.S. 151 (2006), "concerning the constitutionality of Congress's abrogation of Eleventh Amendment immunity under Title II calls *Garcia*'s validity into question." *Dean v. Univ. at Buffalo Sch. of Med. and Biomedical Scis.*, 804 F.3d 178, 194 (2d Cir. 2015). Since Plaintiff fails to plausibly allege that he is disabled under the ADA, the Court need not address whether *Garcia* is applicable here.

Court assesses the sufficiency of Plaintiff's ADA claims only as against Westchester County.

"Courts within this circuit, and the vast majority of courts elsewhere which have considered the question, have held that temporary disabilities do not trigger the protections of the ADA because individuals with temporary injuries are not disabled persons within the meaning of the act." *See Graaf v. North Shore Univ. Hosp.*, 1 F. Supp. 2d 318, 321–22 (S.D.N.Y. 1998) (citing cases); *see also Soto v. Marist Coll.*, No. 17-CV-7976(KMK), 2019 WL 2371713, at *13 (S.D.N.Y. June 5, 2019) (observing that courts have "dismissed ADA claims where plaintiffs were terminated after temporary illness or injury rendered them unable to work for a period of time"); *Dudley v. N.Y.C. Housing Auth.*, No. 12-CV-2771(PGG), 2014 WL 5003799, at *34 (S.D.N.Y. Sept. 30, 2014) (temporary injury while plaintiff was recovering from meniscus surgery did not demonstrate that plaintiff was disabled). Plaintiff states that his knee and meniscus injuries restricted his ability to walk without the aid of crutches for a period of weeks. He does not state that his use of crutches will be permanent or chronic, nor does he indicate the duration or long-term impact of his impairment such that the Court may infer that his injury was not temporary. *See Green v. DGG Props. Co.*, No. 3:11-CV-1989(VLB), 2013 WL 395484, at *11 (D. Conn. Jan. 31, 2013). In sum, Plaintiff has not plausibly alleged that he has a qualifying disability under the ADA. For that reason, Plaintiff's ADA claim must be dismissed.

### C. *Monell* Liability

Plaintiff has sued Westchester County and CCS, neither of which may be held liable simply under a *respondeat superior* theory. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978). Under *Monell*, a plaintiff seeking to impose liability on a municipal entity must demonstrate "that the municipality itself caused or is implicated in the constitutional violation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004). This generally requires plaintiff to allege that "(1) an official custom or policy [] (2) subjected [him or her] to (3)

a denial of a constitutional right." *Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 40 (E.D.N.Y. 2011); *see also Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ("In order to prevail on a claim against a municipality under [S]ection 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.").

Since Plaintiff has not plausibly alleged any constitutional violation, there is no basis for *Monell* liability. Accordingly, the Court need not reach the issue of whether Plaintiff has pleaded sufficient facts to warrant the survival of this action as against Westchester and CCS. However, the Court notes that the Complaint in its current form is conspicuously devoid of any non-conclusory allegations of a widespread policy or practice among Defendants or their employees.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the Complaint are GRANTED, and the Complaint is dismissed without prejudice. Plaintiff is granted leave to file an Amended Complaint. If he chooses to do so, Plaintiff will have until March 27, 2020 to file an Amended Complaint consistent with this order. An Amended Civil Rights Complaint form is attached to this Order. Defendants are then directed to answer or otherwise respond by April 27, 2020.

If Plaintiff fails to file an Amended Complaint within the time allowed, and he cannot show good cause to excuse such failure, all claims dismissed without prejudice by this order will be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 33 & 39. The Clerk is also respectfully directed to mail a copy of this Opinion and Order to Plaintiff at the

address listed on ECF and to file proof of service on the docket.


Dated: February 24, 2020                    SO ORDERED:
White Plains, New York
                                    _____
                                          NELSON S. ROMÁN
                                      United States District Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


                    -against-

_____

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____

(Include case number if one has been
assigned)

### AMENDED
### COMPLAINT
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

## I. LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a *"Bivens"* action (against federal defendants).

☐ Violation of my federal constitutional rights

☐ Other: _____

## II. PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name          Middle Initial          Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City          State          Zip Code

## III. PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☐ Convicted and sentenced prisoner
☐ Other: _____

## IV.  DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1: _____

               First Name          Last Name          Shield #

_____

               Current Job Title (or other identifying information)

_____

               Current Work Address

_____

               County, City          State          Zip Code

Defendant 2: _____

               First Name          Last Name          Shield #

_____

               Current Job Title (or other identifying information)

_____

               Current Work Address

_____

               County, City          State          Zip Code

Defendant 3: _____

               First Name          Last Name          Shield #

_____

               Current Job Title (or other identifying information)

_____

               Current Work Address

_____

               County, City          State          Zip Code

Defendant 4: _____

               First Name          Last Name          Shield #

_____

               Current Job Title (or other identifying information)

_____

               Current Work Address

_____

               County, City          State          Zip Code

## V.    STATEMENT OF CLAIM

Place(s) of occurrence:  _____

Date(s) of occurrence:  _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.


Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.


_____                    _____

Dated                                       Plaintiff's Signature

_____

First Name                 Middle Initial        Last Name

_____

Prison Address

_____

County, City                            State              Zip Code


Date on which I am delivering this complaint to prison authorities for mailing:  _____